And our next case this morning is Deana Coyier v. Andrew Saul All right, I see both counsel. Mr. Duncan, you may proceed Thank you, Your Honor. May it please the court, Dana Duncan on behalf of Deana Coyier This case is simple. Did the commissioner meet his burden of proof at step 5 to establish Ms. Coyier that Ms. Coyier could perform a significant number of jobs in the national economy? If you apply this court's precedent from Chavez and Brace, the answer is no At hearing, the vocational expert was asked to provide the source of his numbers He testified that he used U.S. Publishing's Occupation Employment Quarterly, or the OEQ At hearing, the vocational expert was asked further if the OEQ used an equal distribution method He did. Counsel objected at that point The ALJ asked no question. The ALJ did not inquire about the method, the nature of the OEQ, or any reliance on the data by the vocational expert The burden of proof at step 5 rests with the commissioner And they have the duty, as outlined in Chavez, to ensure that a viable method be employed Mr. Duncan, why shouldn't we consider the Chavez point waived in this case? Because it was undeveloped. There was a categorical objection, a blanket objection made based on Chavez And in discussion with the ALJ, an opportunity was extended to actually brief the question And that was never done So the ALJ considered the objections, said I'd like to accept more briefing A post-hearing brief on the question kept the matter open in order to accommodate development of the argument And it was never developed If the plaintiff is required, or the claimant is required, to develop the argument more than what was done Which is to note the objection, to outline exactly the problems, and to cite the proper case It shifts the burden of proof from the commissioner to the claimant It's not a question of proof, it's just a question of developing the legal argument that you were making For rejecting the vocational expert's testimony Well, and there's a good question about that, of what is required As of Thursday, we now have the Carr decision from the Supreme Court Which, if you look at whether the burden of proof in this case is a procedural due process question There's a question of whether that even has to be developed at all Or if the plaintiff even has to do anything, given that the burden of proof rests with the commissioner Mr. Duncan, let me ask the same question in a slightly different way When I read the transcript of the proceeding before the ALJ There's two things that I come away with You objected on the basis that the equal distribution method was being applied And you pointed to Chavez And in substance, the ALJ said, I have no idea what you're talking about And then said, there will be an opportunity for post-hearing briefing You know, as well as anybody, how busy ALJs are That window was open for you to articulate On your client's behalf, your objection with some particularity And you didn't do so So, we don't have a transcript here That shows us that the ALJ even understood the objection And there was nothing your client did to fill that in So, how can we call that legal error? Well, the ALJ, by the decision, indicated that she read the decision And I guess what the question is, ultimately, is what is the responsibility Of the claimant in these proceedings to outline this And to make it so observable that the ALJ has to act I mean, is there, this court since the 1990s has determined that If there's going to be a problem or a situation where the claimant's Residual functional capacity falls in between the grid rules That a vocational expert has to be available to testify If the claimant realizes that there is no vocational expert being called to the hearing Is it the responsibility of the claimant to then subpoena His own vocational expert in order to try to prove the case for the commissioner To work against his own client, it was the client's detriment To express exactly what their responsibilities are I don't know that we're talking about a big grand issue like that I think all we're talking about is a modicum of diligence And you were invited, were you not, to submit a brief articulating your objection You didn't send anything in Correct And I guess that's the, that is what I'm saying is the ultimate issue in there Is what exactly is required, because if more is required than what I did Then it's my position that it shifts the burden of proof From the commissioner to the claimant Because ALJ read the decision, ALJ read Chavez Had an opportunity to see exactly what Chavez said and didn't do anything So, I guess at I guess at this point in time, your honors I really, most everything I had to indicate in this has been addressed And I will just preserve the remainder for the law That's fine Mr. James May I please the court Good morning your honors and good morning to you Mr. Duncan I'm Daniel Robert James and I'm presenting on behalf of the commissioner Your honors Counsel, your face is almost unseeable Because you have an extraordinarily bright background You need to make it dimmer It's the basic rule of zoom, never to argue in front of an open window Oh okay, oops, let me just shift here a little bit Counsel, all the windows are open Right, this is our problem in this place here Let me then put you this way one second Well, if you get your face very close to the camera, that might help Is this better, can you see me now? A little better A little better Will this be okay to proceed like this? Did you want me to arrange It doesn't look like we have very much choice if you can't close the windows Oh okay, it takes like a couple minutes, they're kind of a pain Well, I apologize about that your honors I'll keep that in mind the next time I'm up here I'm Daniel Robert James and I'm presenting on behalf of the commissioner Your honors, the ALJ had the burden at step five And here's what she did to meet it She called Dr. Matthew Sprung, an impressively credentialed vocational expert With a PhD in rehabilitation Dr. Sprung disclosed his sources And these are sources the court is familiar with There was occupational employment quarterly A source this court has recognized as one that vocational experts customarily rely on And there was the dictionary of occupational titles Which the agency's regulations administratively notice Dr. Sprung also disclosed his method The equal distribution method And used his nearly decade of experience To determine that there were over half a million jobs That Coyer could perform despite her limitations And the ALJ didn't stop there The ALJ even offered, if Coyer had requested it A supplemental hearing and kept the record open So that Coyer could submit a post-hearing brief Because a reasonable adjudicator could agree that this was sufficient The ALJ met the substantial evidence standard at step five Now let's take a look at what Coyer did Given the opportunity to undermine the vocational experts testimony Coyer lodged a single objection that erroneously claimed That this court's holding in Chavez v. Berryhill Had effectively invalidated the equal distribution method Coyer rested on that objection And never submitted a post-hearing brief Despite on multiple occasions saying she would do so That objection did not show anything To show that the vocational testimony was unreliable Otherwise cast doubts on it So the ALJ did what any ALJ would do She rejected that objection as it was presented Because it was based on a flawed basis And as we say in our brief, this is the correct result And essentially the case begins and ends here Because Coyer lodged an objection based on the false premise And the ALJ rejected it And that's really all there is to this case But even if you go past that Coyer did not unearth or even attempt to unearth A single shortcoming to the vocational experts testimony And instead Coyer's logic in her brief Is essentially that if you say I don't like the vocational experts data and sources That this would somehow be enough to undermine that testimony But as the district court said This gives no indication of what the ALJ would be expected To ask or to fix And if the court were to side with Coyer ALJs and lower courts would have no idea Of what needs to be proven to show reliability And because this was just a general objection To the equal distribution method And not fact specific in any way It's essentially going to just invite the same testimony To be recycled throughout every case So what Coyer is going for here Is asking you to make the big holding And find that the equal distribution method Is presumptively invalid And this would be the wrong holding for several reasons First it would be a monumental and sweeping holding Requiring the ALJ to rehabilitate vocational testimony When there's no flaws shown to that testimony This would go against BSTEC A Supreme Court case that came after Chavez That held that the ALJ can accept The vocational experts testimony Without significant testing In order for the ALJ to prove that testimony For errors This would go against your holding in Chavez Which said that the court intends no new obligations And while this court has criticized The equal distribution method in dicta This court or no other court Has found the equal distribution method To be invalid Second your honors The ALJ's step five burden is not limitless And that's what Coyer is effectively asking you to do Is to find it's limitless Remember the burden here The burden is to show a significant number of jobs It's not necessarily a statistically accurate number That's going to be published in a journal So it's either the number is significant Or it's not significant And indeed other circuits have recognized That this is a limited burden It's one that shifts back to the claimant once met And then it's up to the claimant To show meaningful uncertainty Mr. Jonas where does the commissioner stand In it's project to replace  So I have Our website is updated And I know that Coyer said in the brief That it's been abandoned It has not been abandoned In fact right here I'm holding This is a printout from the website of it And the latest entries from fiscal year 2020 Show that the They've collected a second year And they're going to be again a third year Of data collection as part of the second wave Of a five year update And then that the Bureau of Labor Statistics Will publish the data from the initial year Of the second wave So they're in the data collection process still They've been collecting them over five years Of creating that system Still in the process that began in 2008 That's correct your honor It's taken them a lot longer I think than they intended But you can understand why Because if they release the new system And then it's flawed And there's big issues with it Then step five is so important In so many of these cases That a change like that could result in Really delay to all the claimants as well So I think they're taking their time Perhaps more time than anybody ever imagined Or wanted But they're taking their time In developing that system Your honors yes The step five burden is not limitless And this court has actually provided Claimants with a road map Of how they can secure remand And it's not a nebulous or impossible standard In Gebauer this court rejected blanket objections And held that the Claimant must cross examine The vocational expert to show shortcomings And pressed the vocational expert Four times for an explanation Of why two different methods Produce such disparate results And when the vocational expert Could not provide a plausible explanation The court remanded Embraced the vocational expert's answers Were unintelligible The court remanded And in a series of cases Like Donahue, Britton, and Overman The court at times has remanded When the claimant identifies conflicts With the dictionary of occupational titles  Various issues with the reliability of the data Fourth your honors Coyer points out that Occupational employment quarterly Uses an equal distribution method But your honors that's a fact That cuts both ways Because this court has called Occupational employment quarterly A source on which vocational experts Customarily rely And this court is not alone In doing that as numerous courts And circuits have done so That the ALJs can rely On that step 5 testimony Finally as my opponent mentions Last week the Supreme Court Held in a case called Carr That there's no issue exhaustion For constitutional claims But I would direct this court To footnote 5 which says For other claims that are more routine Something that would likely be Like this step 5 case here The scales may tip differently But in the end your honor That actually doesn't matter Because there's a lack Of substantial evidence at step 5 And BSTEC cautions Coyer That even without significant testing That the ALJ can rely On the vocational experts testimony So the court did not even go Into the issue exhaustion And the result would still be to affirm In closing your honors We ask that you reject Coyer's new rule That would create sweeping obligations Against this court's directives in Chavez And affirm the correct result Which is that the ALJ rejected Coyer's new rule And we suggest that you find That the ALJ met her burden At step 5 in showing The significant number of jobs That being over 500,000 jobs And that Coyer introduced No meaningful uncertainty Into that testimony So it was proper for the ALJ To rely on it And unless your honors Have any further questions Then we'll rest on our brief Thank you very much I've never asserted That the equal distribution method Is per se unreliable Chavez makes that clear But what Chavez did do Is it said that the issue is questionable And then laid out What information the ALJ Needs to solicit From the expert In order to allow The equal distribution method To be deemed viable I heard in Mr. Janz's argument Three separate times Where he is asserting That somehow if the vocational expert Provides any testimony at all If the burden shifts To the claimant To prove that the testimony Is false or misleading I don't know of any basis in law I don't know of any basis In case law That says that the burden shifts We have what was normally The situation We had a testimony We had the OEQ The equal distribution method And it is per se By Chavez Questionable Not that it needs to be wiped out It's per se questionable And the fact that it's questionable At that point The case lays out What needs to be done And it just wasn't In this particular case If the court is saying That the burden shifts That's fine I guess I understand the point But the question ultimately is Whose responsibility it is And under that We have a situation Where the administrative law judge Who said she read the case And can easily see it We're not talking about A novice ALJ She said she read the case And she didn't follow up And ask anything about Whether the testimony was reliable Whether he Believed that the testimony Was based in some fact Whether he had some National labor market study That showed the evidence Was reliable Or that it was practical Based upon his training And experience in placing people We have nothing And at that point in time The burden should not Shift to the claimant The doubt is to the validity Of the testimony Which is what was done And at that point It's the burden on the commissioner To go forward and establish it ALJs in hearings on a regular basis now Especially with my office Don't even wait for our office To cross-examine They immediately go in Asking testimony Of the vocational expert About their methods Their systems That's all we're asking for And in most of those cases Because that's done It gives us an opportunity To go forward And to ask the right questions To probe But I can't probe If there's nothing done By the commissioner It would be the essence of me Working against my client And his behalf To do otherwise Thank you